# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JILL HEPOKOSKI, individually, and on behalf of a class, | ) ) | |
| Plaintiff, | ) ) | No. 09 CV 0611 |
| and | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Intervenor-Plaintiff, | ) ) ) | |
| v. | ) ) | Judge St. Eve |
| BRICKWALL OF CHICAGO, LLC d/b/a IMPROV COMEDY CLUB, | ) ) ) | Magistrate Judge Brown |
| Defendant. | ) ) | |
| SUNIL SONI, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | No. 09 CV 1709 |
| and | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Intervenor-Plaintiff, | ) ) ) | |
| v. | ) ) | Judge St. Eve |
| BRICKWALL OF CHICAGO, LLC, | ) ) | Magistrate Judge Brown |
| Defendant. | ) | |

**RESPONSE OF THE UNITED STATES IN OPPOSITION TO
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

**INTRODUCTION**

In these combined actions, plaintiffs Jill Hepokoski and Sunil Soni, on behalf of themselves and putative classes of persons similarly situated, seek redress for alleged willful

violations by defendant Brickwall of Chicago, LLC, of the Fair and Accurate Credit Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952, codified at 15 U.S.C. § 1681c(g). Such violations, if proven, will entitle plaintiffs and the members of their classes, if certified, to monetary relief under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., specifically under the civil liability provisions of 15 U.S.C. § 1681n. Brickwall has moved to dismiss these actions asserting, inter alia, that section 1681n is unconstitutional and, therefore, that no recovery may be obtained under that section. The United States has sought and been granted leave to intervene to defend the constitutionality of section 1681n and submits this brief for that purpose.

## STATUTORY BACKGROUND

### I.  Identity-theft provisions of the Fair Credit Reporting Act as enacted by the Fair and Accurate Credit Transactions Act

Congress enacted FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 2205-06 (2007) (citing 15 U.S.C. § 1681 (Congressional findings and statement of purpose)). In general terms, FCRA seeks to protect "the confidentiality, accuracy, relevancy, and proper utilization" of consumer credit, personnel, insurance, and other consumer information. 15 U.S.C. § 1681(b). Toward those ends, FCRA regulates the contents, dissemination, and use of consumer reports; gives consumers the right to review the contents of their files and dispute information believed to be inaccurate; and provides consumers with notice when adverse actions are taken on the basis of their consumer reports.

In 2003, Congress enacted FACTA as an amendment to FCRA to, among other things,

2

address a consumer credit problem that "has reached almost epidemic proportions in recent years," namely "the emergence and impact of identity theft." H.R. Rep. 108-263 ("House FACTA Report"), at 25 (2003); S. Rep. No. 108-166 ("Senate FACTA Report"), at 8 (2003). Identity theft occurs when a perpetrator assumes a consumer's identity and engages in fraudulent transactions in the consumer's name. *See* House FACTA Report, H.R. Rep. 108-263 at 25; President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan* (Apr. 2007) ("*Presidential Task Force Report*"), *available at* http://www.idtheft.gov/reports/StrategicPlan.pdf. An identity thief may exploit the victim's identity by using the victim's existing credit accounts or creating and using new accounts in the victim's name. *Presidential Task Force Report* 18-21.

Collectively, victims spend billions of dollars recovering from the effects of identity theft. *Presidential Task Force Report* 11; *see also* Federal Trade Commission, *2006 Federal Identity Theft Survey Report* 5-7, 32-42 (Nov. 2007), *available at* http://www.ftc.gov/os/2007/11/SynovateFinalReportIDTheft2006.pdf. In addition to harming consumers and financial institutions, identity theft also threatens "the fair and efficient functioning of consumer credit markets," by "undermin[ing] the accuracy and the credibility of the information flows that support those markets." Senate FACTA Report, S. Rep. No. 108-166 at 8.

Identity theft starts with the acquisition of identifying information about a consumer, such as the consumer's Social Security number, credit-card account numbers, or other financial account information. Obtaining such information "often is no more sophisticated than stealing paper documents" or retrieving them from the trash. *Presidential Task Force Report* 14. FACTA seeks to reduce identity theft by minimizing the opportunities for thieves to obtain such

3

information.

Traditionally, one of the most readily obtained sources of personal financial information has been printed receipts merchants give consumers in credit-card and debit-card transactions. In order "to limit the number of opportunities for identity thieves to 'pick off' key card account information," Senate FACTA Report, S. Rep. No. 108-166 at 13, FACTA prohibits merchants from printing card numbers or expiration dates on customers' receipts. Specifically, FACTA prohibits any business that accepts credit or debit cards from electronically printing "more than the last 5 digits of the card number or the expiration date" on "any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). As the President stated in signing FACTA into law, "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1748 (Dec. 4, 2003), *reprinted in* 2004 U.S.C.C.A.N. 1755, 1757. To give merchants ample opportunity to comply, Congress postponed the new requirements' effective date until December 4, 2006, three years after the law's enactment, for credit-card receipt printers in use before January 1, 2005; and until January 1, 2005, for printers first put into use on or after that date. 15 U.S.C. § 1681c(g)(3).

## II. FCRA remedies for willful violations

Because FACTA was enacted as an amendment to FCRA, violations of its identity-theft protection measures are subject to enforcement under FCRA. FCRA is enforced by several federal agencies, chief among them the Federal Trade Commission, as well as by State Attorneys General. *See* 15 U.S.C. § 1681s(a)-(c). In addition, FCRA authorizes consumers to bring private suits for violations of the Act and its implementing regulations. *Id.* §§ 1681n-1681p. Section 1681n prescribes private remedies for willful violations, while § 1681*o* specifies private

4

remedies for negligent violations.

As originally enacted in 1970, FCRA enabled consumers to recover two kinds of damages for willful violations: actual damages and punitive damages. 15 U.S.C. § 1681n(1)-(2) (1970). In 1996, Congress amended § 1681n to provide the additional remedy of statutory damages in private suits brought for willful violations of FCRA's requirements. Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, § 2412(a)-(c), 110 Stat. 3009-426, 3009-446 (codified at 15 U.S.C. § 1681n(a)).

Most recently, in the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (June 3, 2008), Congress removed liability for willful violations of FACTA's credit-card receipt requirements that occurred prior to the date the Clarification Act was signed (June 3, 2008) where the violations consisted *solely* of printing credit-card expiration dates on a receipt given to a consumer. *Id.* § 3(a), 122 Stat. at 1566 (codified at 15 U.S.C.A. § 1681n(d) (West, Westlaw through Nov. 2008 legislation)). Violations involving only the printing of the expiration date that occurred after the Clarification Act's enactment remain subject to private lawsuits alleging willfulness and seeking damages under § 1681n. Thus, where the only willful violation of FACTA that appears on a receipt is the printing of the card's expiration date, there is no liability for statutory damages when the receipt was printed between December 4, 2006, and June 3, 2008; but there is liability for such damages if the receipt was printed after June 3, 2008. 15 U.S.C. § 1691n(d).

## ARGUMENT

Brickwall's motion to dismiss is directed to plaintiffs' allegations that Brickwall willfully printed card expiration dates on receipts issued to plaintiffs and the members of their putative

5

classes after June 3, 2008. See Defendant Brickwall of Chicago, LLC d/b/a Improv Comedy Club's Rule 12(b)(6) Motion to Dismiss (Def. Motion), Dkt. No. 20, at 2:

> Defendant moves to dismiss both Complaints because the Clarification Act, including its express Purpose and Findings, bar any claim for statutory damages for a FACTA expiration date truncation claim arising after June 3, 2008. Alternatively, the Findings of the Clarification Act render any award of statutory damages unconstitutionally disproportionate.

The United States has sought and been granted leave to intervene in these cases to oppose Brickwall's alternative, constitutional challenge to the FCRA's statutory damages provision.[1] Because, however, there has been no determination that Brickwall has committed any willful violation of FACTA, the *sine qua non* of a claim for statutory damages, this court need not, indeed should not, even address Brickwall's constitutional challenge. If, however, the court chooses to engage in such a speculative exercise, it should conclude that Brickwall's constitutional claim is without merit.

## I. The Court Should Not Consider the Constitutionality of the Statutory Damages Provision Prior to Any Determination of Liability or Award of Damages

The most basic reason that this court should deny Brickwall's motion to dismiss on its constitutional claim is that it should not, at this point in this litigation, even consider that claim. In order for there to be any real and present controversy over the constitutionality of the statutory damages provision of FCRA, the court needs first to determine that the provision is applicable in these cases, *i.e.*, that Brickwall has committed willful violations of FACTA with respect to

---

[1] As we explained above in the Statutory Background section of this brief, while the violation asserted by plaintiffs, the willful printing of card expiration dates on receipts issued after June 3, 2008, is prohibited by FACTA, redress for such violations is provided by the statutory damages provision of FCRA.

transactions between Brickwall and plaintiffs and the members of their putative classes. While Brickwall apparently admits that it printed the expiration dates of plaintiffs cards on receipts issued to them, it nowhere concedes that its printing of the expiration dates was willful. Unless and until this court determines that the printing of the expiration dates was willful, thus exposing Brickwall to statutory damages, it has no reason to address whether those statutory damages would be "unconstitutionally disproportionate."

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *Ashwander v. Tenn Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). As noted above, statutory damages are available for FACTA/FCRA violations only if there is a finding that the violations were willful. There has been no such finding in this case. If the court finds that Brickwall's violations were not willful, or if the case simply settles before the question of willfulness is decided, no award of statutory damages will be made. In that event, there will be no need for this court to rule on the constitutionality of the statute at all. And, as the Seventh Circuit has instructed: "federal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions." *ISI Intern., Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

We know of only one court that has ruled that a potential damage award would be unconstitutionally excessive, much less that has invalidated an Act of Congress on the ground that it could lead to a potentially excessive award, before liability has been found and a constitutionally excessive award granted. That was the district court in *Grimes v. Rave Motion*

7

*Pictures Birmingham*, LLC, 552 F. Supp. 2d 1302, 1306 (N.D. Ala. 2008), and that court's decision was promptly and resoundingly rejected by the court of appeals in *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1309-11 (11th Cir. 2009).

Unlike the *Grimes* district court, the Seventh Circuit and numerous judges in this district have held it improper to decide the potential constitutional excessiveness of a hypothetical FACTA/FCRA statutory damages verdict so early in a case. The leading decision is *Murray v. GMAT Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). The Seventh Circuit there held that "[a]n award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure." *Id.* at 954 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Like the other courts in this district that have addressed the issue, this court should follow *Murray* as well.[2]

## II. FACTA/FCRA Statutory Damages Are Not Unconstitutionally Excessive

Brickwall's entire constitutional challenge to the statutory damages provision of FCRA is premised on its assertion that the Clarification Act cannot mean what it says. The Clarification

---

[2] At least twelve judges of this District have followed *Murray* in refusing to make premature constitutional decisions about the potential excessiveness of hypothetical FCRA statutory-damages verdicts. *Soprych v. T.D. Dairy Queen*, No. 08-C-2694, 2009 WL 498535 (N.D. Ill. Feb. 26, 2009); *Irvine v. 233 Skydeck, LLC*, 597 F. Supp. 2d 799, 804 (N.D. Ill. 2009); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 839-40 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 288 (N.D. Ill. 2008); *Beringer v. Standard Parking Corp.*, Nos. 07-C-5027 & 07-C-5119, 2008 WL 4390626, at *5 (N.D. Ill. Sept. 24, 2008); *Harris v. Best Buy Co.*, 254 F.R.D. 82, 89-90 (N.D. Ill. 2008); *Follman v. Vill. Squire, Inc.*, 542 F. Supp. 2d 816, 821 (N.D. Ill. 2007); *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 617-18 (N.D. Ill. 2007); *Troy v. Home Run Inn, Inc.*, No. 07-C-4331, 2008 WL 1766526, at *3 (N.D. Ill. Apr. 14, 2008); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014, at *4 (N.D. Ill. Dec. 4, 2007); *Halperin v. Interpark, Inc.*, No. 07-C-2161, 2007 WL 4219419, at *4 (N.D. Ill. Nov. 29, 2007).

Act states *in haec verba* that statutory damages are available for willful violations of the expiration date prohibition occurring after June 3, 2008. Yet Brickwall argues that one of the findings made by Congress in passing the Clarification Act, read in isolation, would render application of that provision unconstitutional.

Brickwall characterizes the finding on which it relies as follows: "Congress found that printing an expiration date does not present any risk or injury to the consumer's identity or credit." Def. Motion at 14. Congress found no such thing. Rather, Congress reviewed what had transpired since the passage of the original version of FACTA, summarized it as providing that "no person . . . shall print more than the last 5 digits of the card number or the expiration date upon any receipt," and found that "[m]any merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits." Pub.L. 110-241 (June 3, 2008), § 2(a)(2), (3). In order to remedy that misunderstanding, and in light of "hundreds of lawsuits [that] were filed alleging that the failure to remove the expiration date [alone] was a willful violation," *id.*, § 2(a)(4), Congress clarified that printing of an expiration date on any receipt issued "between December 4, 2004, and June 3, 2008," without any other violation appearing on the receipt, would not constitute willful noncompliance with FACTA. 15 U.S.C. § 1691n(d).

It was in this context that Congress made the finding, mischaracterized by Brickwall, that "Experts in the field agree that proper truncation of the card number, by itself, . . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub.L. 110-241, § 2(a)(6). Nonetheless, and despite the view of these "experts," Congress expressly made the printing of a card's expiration date after June 3, 2008,

9

even on a receipt on which the card number is properly truncated, a violation. It is Congress that determines what its laws require and prohibit; and Congress, having acted to remedy any prior misunderstanding with respect to FACTA's expiration date prohibition, determined that the willful printing of a card's expiration date on a receipt after June 3, 2008, justifies statutory damages.

But there is a more basic flaw in Brickwall's constitutional challenge than its wishful misreading of the Congressional findings underlying the Clarification Act. And that fatal flaw is articulated by the Supreme Court in the principal case on which Brickwall seeks to rely, *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). In that case, the Supreme Court reviewed a State statute that prescribed statutory penalties in the range of $50 to $300 for railway overcharges in light of an award of $75 to two passengers who had been overcharged 66 cents. *Id.* at 63-64.

In *Williams*, the Court acknowledged that the government has "a wide latitude of discretion" in setting statutory penalties, and instructed that legislative judgments as to the proper amount of such penalties must be sustained unless "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66-67. The Court acknowledged that when the statutory penalty was "contrasted with the overcharge possible in any instance it of course seems large," but emphasized that "its validity is not to be tested in that way." *Id.* at 67. Instead, it must be "considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates." *Id.* The Court held that under this analysis, the statutory penalty was not "so severe and oppressive as to be wholly disproportioned

10

to the offense or obviously unreasonable" and, therefore, did not violate the Due Process Clause. *Id.*

The *Williams* due process considerations all indicate that awards of statutory damages under FACTA/FCRA are constitutional. First, "the interests of the public" here are at least as consequential as they were in *Williams*. Congress found identity theft causes billions of dollars of losses to consumers and financial institutions, and it threatens the integrity of the consumer credit system even though, as recognized in *Murray, 434 F.3d at 953,* "individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft." There is a strong public interest in prohibiting commercial practices that give thieves opportunities to "'pick off' key card account information." Senate FACTA Report, S. Rep. No. 108-166 at 13. Second, the "opportunities for committing the offense" are just as "numberless" here as they were in *Williams*; the willful failure of a merchant to meet its obligations under FACTA can result in printing the account information of thousands or tens of thousands of consumers. Finally, the need to "secur[e] uniform adherence" to FACTA's identity-theft protections is surely as great as the need to secure uniform adherence to railroad passenger tariffs in *Williams*. FCRA's statutory damages range cannot be found "wholly disproportioned to the offense."

Moreover, the courts owe strong deference to Congress's determination that $100 to $1,000 is the appropriate statutory damage range for willful violations of FCRA. In *Williams*, where the Supreme Court upheld civil penalties in a statutory range of $50 to $300 per violation, the Court stressed that although such awards are subject to the Due Process Clause, legislatures "possess a wide latitude of discretion in the matter." *Williams*, 251 U.S. at 66. It is simply

11

untenable to argue, especially at this stage of the present case when there has as yet been no finding that Brickwall willfully violated FACTA, that the statutory damages to which it may be exposed are unconstitutionally excessive.

Finally, it is noteworthy as well as instructive that *Williams*, as well as every other case cited by Brickwall in ostensible support of its argument that statutory damages for expiration date violations of FACTA are unconstitutional, upheld damages awarded in the face of similar constitutional challenges. Brickwall, in other words, cannot find even one case to support its position.

## CONCLUSION

For all of the reasons discussed above, the court should deny Brickwall's motion to dismiss insofar as it seeks a determination that the FACTA/FCRA statutory damages provision is unconstitutional.

Respectfully submitted,

TONY WEST
Assistant Attorney General

PATRICK J. FITZGERALD
United States Attorney

By: s/ Gina E. Brock
GINA E. BROCK
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-7919
gina.brock@usdoj.gov

EUGENE M. THIROLF
Director
Office of Consumer Litigation

s/ Gerald C. Kell
GERALD C. KELL
Senior Trial Counsel
Office of Consumer Litigation
United States Department of Justice
P.O. Box 386
Washington, D.C. 20044
(202) 514-1586
gerald.kell@usdoj.gov