UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ADAM VIDONI, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | ) |
| | ) Docket no. 11-cv-00448-NT |
| THE ACADIA CORPORATION, | ) |
| | ) |
|        Defendant. | ) |
| | ) |

**OPINION AND ORDER
ON MOTION TO DISMISS**

      This case comes before the Court on the Defendant's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's proposed class action under the Fair and Accurate Credit Transaction Act of 2003. For the reasons discussed below, the motion is **GRANTED**.

**I. LEGAL STANDARD**

      Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & 8(d)(1). The First Circuit has set forth, consistent with *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the "proper way of handling a motion to dismiss" under Rule 12(b)(6):

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Step two: take the complaint's well-pled (*i.e.* non-conclusory,

>non-speculative) facts as true, drawing all reasonable inferences in the
>pleader's favor, and see if they plausibly narrate a claim for relief.

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1949, 1950).

## II. BACKGROUND

On September 10, 2011, Plaintiff Adam Vidoni made a purchase at the Jordan Pond House Restaurant with his Mastercard credit card. This restaurant is located in the Acadia National Park in Bar Harbor, Maine, and operated by the Defendant. Mr. Vidoni received a receipt from the transaction that did not contain Mr. Vidoni's complete credit card number but did contain his credit card's expiration date. On November 23, 2011, the Plaintiff sued the Defendant on behalf of himself and others who, on or after June 3, 2008, made purchases at retail locations operated by the Defendant and were provided with a printed receipt containing the expiration date of their credit card.

This proposed class action arises out of a provision in the Fair and Accurate Credit Transaction Act of 2003, ("**FACTA**"), which was enacted by Congress to combat identity theft. Pub. L. 108-159, 117 Stat. 1952 (amending the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x). Among other things, FACTA makes it illegal for a "person that accepts credit cards or debit cards for the transaction of business" to "print more than the last five digits of the card number or the

expiration date upon any receipt provided to the cardholder at the point of sale of transaction." 15 U.S.C. § 1681c(g)(1). A merchant who negligently violates this statute is liable for any actual harm sustained by a customer as a result of the violation, plus costs and attorney's fees. § 1681o(a). However, a merchant who willfully violates this statute is liable for statutory damages of between $100 and $1,000 per transaction, plus costs and attorney's fees, and the possibility of punitive damages, irrespective of any actual harm to the customer. § 1681n(a). Mr. Vidoni does not claim any actual harm, and the class proposed in the Complaint excludes anyone "who has suffered identity theft as a result of Defendant's violations of FACTA as delineated in this Complaint."

Much of the Complaint is taken up with reciting various sources — from the U.S. Office of Thrift Supervision and the Federal Trade Commission, to Visa USA, the Credit Union National Association, the National Association of Convenience Stores, and various state restaurant and other trade associations — that have published articles and alerts about FACTA's requirement that the expiration date must be removed from point-of-sale credit and debit card receipts. The Plaintiff also alleges that a federal bill that was approved on June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565, (the "**Clarification Act**"), provided further publicity regarding FACTA's requirements. The Clarification Act gave a safe harbor to merchants who had printed expiration dates on receipts prior to June 3, 2008, by declaring all such violations non-willful. These general allegations do not specifically relate to the Defendant.

The Complaint then alleges that the Defendant was apprised of FACTA's expiration date requirement through trade associations, agreements with credit card issuers, its bank or other entity that performed credit and debit card payment clearing services, and/or its point-of-sale providers, but that, notwithstanding its knowledge of this requirement, it permitted the printing of thousands of unlawful receipts. Finally, it alleges that the Defendant was compliant with FACTA's requirements at some of its businesses, but nevertheless knowingly permitted the printing of unlawful receipts at its Jordan Pond House Restaurant location.

### III. DISCUSSION

The Defendant asserts that the Plaintiff fails to plausibly allege that it committed a willful violation of FACTA. The Court agrees.

FACTA amended and is part of the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681 – 1681x (2009) ("**FCRA**"). The Supreme Court has defined "willfulness" for purposes of FCRA actions as covering "not only knowing violations… but reckless ones as well . . . ." *Safeco Ins. Co. of Am. v. Burr et al.*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Recklessness, in turn, is defined as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68.

#### A. Knowing Violation

The Plaintiff's primary claim in this case is that the Defendant willfully violated FACTA because it knew about FACTA's truncation requirements and failed to implement those requirements at the Jordan Pond House Restaurant. The

Plaintiff first asserts that the marketplace was so saturated with news regarding FACTA's expiration-date-removal requirement that the Defendant could not have escaped awareness of it. Complaint at ¶¶ 29-41. The Plaintiff next alleges that the Defendant's credit card issuers, bank, point of sale providers and trade associations specifically advised Defendant of FACTA's truncation requirements. Complaint at ¶¶ 43-47.

Both sides point to cases either granting or denying motions to dismiss on allegations similar to those in the Complaint. The Defendant cites to cases that granted motions to dismiss. *See Seo v. CC CJV Am. Holdings, Inc.*, No. CV-11-05-31DDP (MRWx), 2011 WL 4946507, *2 (C.D. Cal. Oct. 18, 2011) (fact that information about FACTA was available to defendant did not support plaintiff's assertion that defendant knowingly ignored FACTA's provisions); *Gardner v. Appleton Baseball Club, Inc.*, No. 09-C-705, 2010 WL 1368663, *5 (E.D. Wis. March 31, 2010) (FTC's guidance on compliance with FACTA insufficient to infer that defendant printed expiration dates willfully rather than negligently); *Huggins v. Spaclinic, LLC*, No. 09 C 2677, 2010 WL 963924, *2 (N.D. Ill. March 11, 2010) ("Plaintiff alleges that FACTA's requirements were well-publicized and that credit card companies required compliance with the statute, but these allegations are not specific to the defendant.").

The Plaintiff points to cases that have denied motions to dismiss. *See Sanders v. W&W Wholesale Inc.*, No. 11 C 3557, 2011 WL 4840978, *2 (N.D. Ill. Oct. 12, 2011) ("[I]ssues concerning a state of mind such as knowledge or willfulness

5

often involve fact-intensive inquiries and are not ordinarily resolved at the motion to dismiss stage."); *Zaun v. Tuttle, Inc.*, No. 10-2191 (DWF/JJK), 2011 WL 1741912 (D. Minn. May 4, 2011) (because defendant disregarded its third-party compliance contractor's warning that defendant would need to upgrade its terminals to comply with FACTA, complaint adequately alleged willful violation.); *Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664266, *3 (D. Md. April 22, 2010) (defendant's failure to follow FACTA's well-publicized truncation requirements sufficient to allege a willful violation of FACTA).

One of the Plaintiff's allegations in this case, however, distinguishes it from any of the cases cited by either side. The Plaintiff alleges that the Defendant was in compliance with FACTA's truncation requirements at some of its businesses.[1] The allegation that the Defendant was complying with FACTA at other locations, which the Court accepts as true at the motion to dismiss stage, creates a strong inference that it knew of FACTA's requirements.

But that does not end the analysis. In order to allege a willful violation, there must be some allegation that the Defendant knew of the standard and voluntarily or intentionally violated it. The First Circuit, assessing whether OSHA violations were willful, explained:

> Various decisions have defined "willful" violations as "conscious and intentional disregard of conditions;" "deliberate and intentional misconduct;" "careless disregard of employee safety;" "utter disregard

---

[1] The Complaint alleges that the Defendant "operates multiple retail interpretive centers in the Acadia National Park and several gift shops outside the park in the Bar Harbor Community." It also alleges that "[u]pon information and belief, prior to the transaction at issue, Defendant was in compliance with FACTA's truncation requirements at certain of its businesses . . . ." Complaint at ¶¶ 14 & 48.

>of consequences;" and similar descriptions. They all indicate that the Complainant should at least prove that the Respondent knew of the standard, and its violation was voluntary or intentional or with plain indifference to the Act.

*Brock v. Morello Bros. Const. Inc.,* 809 F.2d 161, 164 (1st Cir. 1987).

This concept of deliberateness is repeated throughout the Supreme Court cases which have developed and elucidated the "willfulness" standard leading to its iteration in the *Safeco* case. In *United States v. Illinois Central R. Co.,* 303 U.S. 239, 243, 58 S.Ct. 533, 82 L. Ed. 773 (1938), the Court held that conduct of a railroad carrier which showed disregard for and indifference to the requirements of a statute requiring regular unloading of cattle from railroad cars for rest, watering and feeding, was willful. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985), the Court, in the context of a statute which provided liquidated damages for willful violations of the Age Discrimination in Employment Act of 1967 ("**ADEA**"), rejected a definition of "willful" which would have included violators who "simply knew of the potential applicability of the ADEA." *Id.* at 127. The *Thurston* Court adopted the language, later applied to the FCRA in *Safeco,* that a willful violation was one in which the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *Id.* at 126. Finding that TWA had not acted willfully, the Court stated: "The record makes clear that TWA officials acted reasonably and in good faith in attempting to determine whether their plan would violate the ADEA." *Id.* at 129. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988), the Court applied the *Thurston* definition of "willful" in the context of

7

a Fair Labor Standards Act provision which provided a longer statute of limitations period for willful violations. The *McLaughlin* Court explained:

> In common usage, the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th Ed.). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.

*Id. McLaughlin* rejected the Fifth Circuit's definition of "willful" in which a defendant willfully violates a statute if the defendant merely "knew that the [statute] 'was in the picture'" as a definition that "obliterates any distinction between willful and nonwillful violations." *Id.* at 132-33. *Safeco* cited *Thurston* and *McLaughlin* in its discussion of the meaning of "willful" under the FCRA. *Safeco*, 551 U.S. at 57. Although *Safeco* was concerned with establishing the "reckless disregard" prong of willfulness, it did not discard or undermine the Court's earlier explanations of the term "willful."

Merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, *i.e.* a voluntary, deliberate, or intentional violation. *McLaughlin,* 486 U.S. at 132-33. The allegation that the Defendant actually was complying with FACTA at other locations undermines the Plaintiff's claim that the Defendant willfully violated FACTA at the Jordan Pond House Restaurant. The only reasonable inference from the Defendant's failure to implement FACTA at one of its locations and not others is that the Defendant's failure was inadvertent. The fact that the Defendant truncated

the credit card numbers at the Jordan Pond House Restaurant further supports the inference that the Defendant was neither disregarding FACTA nor indifferent to its requirements. The Defendant's conduct may have been negligent, but, on the facts alleged in the Complaint, it was not willful.

The Plaintiff also argues that dismissal of his case is generally inappropriate because "a determination of willfulness under the FCRA is almost always a question of fact for the jury." *Plaintiff's Opposition to Defendant's Motion to Dismiss*, p. 7 (Doc. # 12). All of the cases cited by the Plaintiff in support of this assertion are credit reporting cases in which the plaintiffs presented evidence that the defendants were either aware that their procedures were inadequate to meet the FCRA's requirements or were repeatedly committing errors of the sort that had harmed the plaintiffs, suggesting reckless disregard.[2] None of the cases presented allegations in which the defendants' actions could only reasonably be interpreted as an

---

[2] The Plaintiff cites six cases including *Sheffer v. Experian Info. Solutions, Inc.*, No. CIV.A. 02–7407, 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (summary judgment on defendant credit reporting agency's liability for willful violation of FCRA denied in suit alleging credit reporting agency failed, despite repeated requests from plaintiff, to correct credit report erroneously stating that plaintiff was deceased); *Harris v. Equifax Info. Servs, LLC*, No. 6:06-cv-01810-GRA, 2007 WL 1862826, *2 (D.S.C. June 26, 2007) (defendant denied summary judgment on question of willful violation of FCRA where plaintiff produced evidence that defendant knew its failure to include credit limit data was harmful to consumers and not in compliance with FCRA); *Thomas v. U.S. Bank, N.A.*, CV 05-1725-MO., 2007 WL 764312, *8 (D. Or. March 8, 2007) (question of willful violation of FCRA survived summary judgment where defendant credit reporting agency repeatedly failed to discover and report on plaintiff's credit report significant, readily ascertainable information); *Cairns v. GMAC Mort. Corp.*, No. CIV 04-1840-PHX-SMM, 2007 WL 735564, * 8 (D. Az. March 5, 2007) (same as *Thomas*); *Apodaca v. Discover Financial Services*, 417 F.Supp. 2d 1220, 1234 (D.N.M. 2006) (denying summary judgment to defendant on question of willful violation of FCRA because plaintiff presented evidence that credit reporting agency was aware its programs and information processing procedures were inadequate to accurately compile and report consumer credit information); *Johnson v. MBNA America Bank Nat'l Ass'n*, No. Civ. 1:05CV00150, 2006 WL 618077, *5 (M.D.N.C. March 9, 2006) (summary judgment on question of willful violation of FCRA denied to defendant bank that failed, following repeated inquiries and requests by deceased consumer's wife, to either disassociate plaintiff from the debt or to provide clear evidence to plaintiff of her liability on the account).

inadvertent oversight. The plaintiffs in *Sheffer*, *Harris*, *Thomas*, *Cairns*, *Apodaca*, and *Johnson* had all complained, sometimes multiple times, to the defendants about the errors in their credit reports prior to filing suit. By contrast, the Plaintiff here makes no claim that he alerted the Defendant to its FACTA violation prior to filing suit, much less that the Defendant continued in a course of non-compliance following any such communication. The Plaintiff's interaction with the Defendant in this case instead consists of a single transaction that the Plaintiff did not report to the Defendant.

### B. Reckless Disregard

The Plaintiff also refers to the reckless disregard component of willfulness, stating "Defendant had actual knowledge of FACTA's truncation requirements, or acted recklessly with respect to FACTA's truncation requirements . . . " and "Defendant knew of, or should have known of, and were [*sic*] informed about the law . . . ." Complaint at ¶¶ 42, 69.

To sustain a claim for recklessness, the Plaintiff is required to allege that the Defendant disregarded an "unjustifiably high risk of harm" to its customers by failing to omit expiration dates from its receipts. *See Safeco*, 551 U.S. at 68. Congress, however, has acknowledged that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card theft." S*ee* Clarification Act, § 2(a)(6). At oral argument, Plaintiff's

10

counsel argued that harm could result if a criminal acquired a discarded receipt with an expiration date and name, found out where the cardholder lived, sabotaged that cardholder's trash and found a discarded credit card statement with the cardholder's number. With these three pieces of information, Plaintiff's counsel posited, the criminal could make charges to the account. While this scenario is technically possible, it does not generate the "high risk of harm" contemplated by the standard.

Reckless disregard may be found where a merchant either deliberately fails to determine the extent of its statutory obligations, as in *Zaun*, 2011 WL 1741912 at *2, or relies on creative lawyering to provide it with an indefensible position on the scope of such obligations, s*ee Safeco*, 551 U.S. at 69. The Complaint alleges no facts that would bring this case within either of these categories. Accordingly, the Plaintiff fails to state a claim that the Defendant recklessly disregarded its obligations under FACTA.

## CONCLUSION

Viewed in the light most flattering to the Plaintiff, there are insufficient allegations in the Complaint to create a plausible inference that the Defendant violated FACTA willfully. Because the Plaintiff acknowledges that he suffered no harm and because he purports to represent a class that excludes anyone who has suffered harm, the Complaint fails to state a claim upon which relief can be granted. Accordingly, the Defendant's motion to dismiss the Complaint is **GRANTED**.

SO ORDERED.

                                                                   /s/ Nancy Torresen
                                                                   United States District Judge

Dated this 27th day of April, 2012.